GRAYBAR ELECTRIC COMPANY, INC., Respondent, *v.* SEABOARD SURETY COMPANY, Appellant.

Supreme Court, Appellate Term, First Department, November 1, 1935.

*William Lurie* [*Elliott W. Isaacson* and *David S. Konheim* of counsel], for the appellant.

*Greene & Hurd* [*Emerson F. Davis* and *Giddings Howd* of counsel], for the respondent.

CALLAHAN, J.   The defendant, as surety, and the Keresey-Ryan Corporation, as principal, executed a bond to Sears, Roebuck & Company as obligee, for the completion of a building being erected

by the principal for the obligee in the State of New Jersey. This bond contained, *inter alia*, the following provisions: "Now, if the said Keresey-Ryan Corporation shall well and faithfully do and perform the things agreed by it to be done and performed according to the terms of said contract, and shall pay all lawful claims of subcontractors, materialmen and laborers, for labor performed and materials furnished in the carrying forward, performing or completing of said contract, we agreeing and assenting that this undertaking shall be for the benefit of any materialman or laborer having a just claim, as well as for the obligee herein; then this obligation shall be void," etc.

Plaintiff, having furnished materials to the Keresey-Ryan Corporation, sues the surety on the bond for a balance due on the purchase price of the materials. The complaint contains the customary allegations as to the giving of the bond, the performance of the work, etc. It adds that during the period set for performance the contractor assigned for the benefit of creditors and the assignee completed performance in a manner satisfactory to the obligee and that all sums due from the obligee to the contractor were paid to the assignee. Plaintiff further alleges that it filed proof of claim with the assignee and received a dividend for which it is giving defendant credit. The complaint further alleges that Sears, Roebuck & Company, the promisee, is in no wise interested in the bond and that the penal sum thereof is in excess of all claims of subcontractors and materialmen.

Defendant pleads by way of affirmative defenses that Sears, Roebuck & Company was not indebted to plaintiff when the bond was executed or at any time thereafter. It further asserts plaintiff has no right to enforce the bond for the reason that there was no privity of contract between it and the promisee and no obligation or duty owed by the promisee to plaintiff.

A motion made below to strike out these defenses was granted and it is from this order that defendant appeals.

. The court below relied largely on the recent decision in *McClare v. Mass. Bonding & Ins. Co.* (266 N. Y. 371). It is to be noted, however, that in that case the majority of the judges of the Court of Appeals upheld the right of the plaintiff to sue solely on the ground of estoppel. In the instant case there is no element of estoppel because plaintiff concedes that it did not know of the existence of the bond until after it had performed the work. However, in the *McClare* case the opinion of FINCH, J., in which two other judges concurred, questioned any necessity for the promisee being obligated to the beneficiary or of privity between the parties to the suit. The dissent in that case did not rest on the necessity of

an obligation of the promisee to the plaintiff beneficiary or of privity of contract but appears to have been based in the main upon the ground that the State Commission which had ordered the bond had exceeded its powers in doing so.

The court below also found that the plaintiff in the instant case came within the fourth class of beneficiaries enumerated, as having the right to sue, in *Seaver* v. *Ransom* (224 N. Y. 233, 238). That class includes cases where, at the request of a party to the contract, the promise runs directly to the beneficiary, although the beneficiary does not furnish the consideration.

The provision in the present bond for indemnification of those supplying materials was undoubtedly inserted at the request of the promisee. But did the promise run " directly " to the beneficiary? The meaning of this term as used in defining the group can best be determined from a consideration of the precedents cited illustrating it. Among those cases cited as coming within the fourth group is *Rector* v. *Teed* (120 N. Y. 583). There the promisor agreed to pay $500 to a church in consideration of the promisee withdrawing his objections to the probate of a will. A note for that sum, payable to the church, was delivered to the promisee who in turn delivered it to the beneficiary. We see no difference in principle between that case and ours on the question of whether the promise was made directly to the beneficiary. Here the beneficiary was named in the bond, not specifically it is true, but as a member of a limited class. The bond was delivered to the promisee for the benefit of all indemnified. The failure of the promisee to disclose the promise to the beneficiary until after the work was performed would not seem to make the promise less direct. The object sought was to indemnify persons who later aided in doing the work. As was said in *Strong* v. *American Fence Construction Co.* (245 N. Y. 48, 53): " Security to materialmen and laborers was the end and aim of the transaction. If the promise was not for them it was without significance or reason."

In any event, *Seaver* v. *Ransom* (*supra*) did not hold that the four classes specified were rigid and exclusive. It merely said that a general rule sustaining recovery at the suit of a beneficiary would include but few classes of cases not specified in the four groups enumerated, either categorically or in principle. This case at least comes within the principles involved in the fourth group.

But *Seaver* v. *Ransom* did not merely indicate an abstract classification of cases in which a beneficiary might enforce a promise. The concrete issue before the court was determined on the broad principle, that where the intention of the parties was clearly to grant to a third party beneficiary the right to enforce a contract, that

right should not be denied unless some facts in the case made it inequitable to permit such action. The decision stated that the prevailing rule in this country upheld the right of a beneficiary to sue on such a contract, the reason for the rule being that it is just and practical to permit the person for whose benefit such a contract is made to enforce it against one whose duty it is to pay. It pointed out that the doctrine intended to be adopted in *Lawrence* v. *Fox* (20 N. Y. 268) was that any person for whose direct benefit a contract was made could sue on it. It then went on to discuss the limitation placed on *Lawrence* v. *Fox* by *Vrooman* v. *Turner* (69 N. Y. 280) and asserted that such limitation, confining the right to maintain an action to a beneficiary to whom the promisee was obligated, was not strictly enforced when the application of such a rule of limitation with technical accuracy might interfere with the desire to do justice between the parties. The court also held that the right to recover should depend on the facts of each case rather than the law in some other case, and said that as the equities in the case before it were so clearly with the plaintiff, the beneficiary, she should be permitted to enforce the promise made.

We think that a right to recover should likewise be held to exist in the case of one furnishing labor or material for the erection of a building, the owner of which required the contractor to furnish an undertaking containing an express provision for the indemnification of laborers and materialmen. It would appear grossly inequitable in view of such provision to permit the promisor to escape fulfillment of his promise on any technical requirement of privity of contract, or of the existence of an obligation on the part of the promisee to the beneficiary.

The rule generally applied in this situation is epitomized in the American Law Institute's Restatement of the Law of Contracts (Vol. 1, § 135) as follows: "A gift promise in a contract creates a duty of the promisor to the donee beneficiary to perform the promise; and the duty can be enforced by the donee beneficiary for his own benefit."

Professor Whiteside, in his New York Annotations of the above work, expresses the belief that our Court of Appeals, in *Seaver* v. *Ransom*, intended to adopt a similar rule for this State. We are in accord with that interpretation at least as to the situation found here.

Appellant, however, asserts an additional reason why respondent may not maintain this action. Taking the view that the attack on the defense searches the sufficiency of the complaint, it argues that an action such as this may not be maintained at law, especially where the promisee is not a party thereto. In support of this

contention it relies largely on the decision in *Fosmire* v. *National Surety Co.* (229 N. Y. 44). That case was one where a bond had been given to the State pursuant to statute. The Court of Appeals said that the essential purpose of the undertaking and the statute authorizing it was to protect the State. It found that other claims might be made against the State, or the State itself might have claims against the surety, and that the penalty of the bond might be exhausted if recourse was permitted to it by employees and contractors in hostility to the claims of the State. The court stated, however, that its decision against allowing plaintiff to recover was based upon the single ground that the bond read in its entirety was inconsistent with the intention that the beneficiary might sue upon it. No such situation exists here. The intention of the contracting parties as clearly expressed in the present bond is that a materialman may enforce a just claim against the surety. Further, the present complaint asserts that all claims of the obligee have been fully satisfied by the completion of the building and that the penal sum of the bond is greater than all claims of subcontractors and materialmen.

The situation then is quite similar to that found in *Eddy, Inc.*, v. *Fidelity & Deposit Co.* (265 N. Y. 276, 279) where the court said: " Danger that the city of Buffalo may be made the victim of a claim antagonistic to its own interest in the penalty of this bond is not apparent. The public work in question has been accepted by the municipal authorities and final payment for it has been made."

It has been held that the promisee may sue in equity to enforce the promise on behalf of the beneficiary. (*Croker* v. *New York Trust Co.*, 245 N. Y. 17.) But the courts also have said that a promisee cannot be compelled to bring such an action. (*Van Clief & Sons, Inc.*, v. *City of New York*, 141 Misc. 216.) That the present promisee would bring such a suit where he has received complete satisfaction is extremely doubtful. Is the law then to leave the beneficiary in a case such as this entirely dependent on the good offices of the promisee? We think not. The present practice permits a defendant to bring in other claimants, and indeed the promisee, if their presence is necessary to a determination of the case. (Civ. Prac. Act, § 193, subd. 1.)

In *Strong* v. *American Fence Construction Co.* (*supra*), which was a case where the beneficiary was granted a right of action on a similar bond by statute, the plaintiff was said to be entitled, *prima. facie*, to the amount it claimed, with the limitation that its recovery could not exceed its *pro rata* share of the bond. Proof of plaintiff's demand was said to cast the burden on defendant of going forward

to show any facts in reduction of damage or that other claimants might share in the security. We see no reason why that procedure may not be followed here.

We find the complaint sufficient and the defenses inadequate to meet it.

Order affirmed, with ten dollars costs and disbursements.

All concur. Present — LYDON, CALLAHAN and SHIENTAG, JJ.