DANIEL-MORRIS Co., INC., Appellant, v. GLENS FALLS INDEMNITY COMPANY et al., Respondents, et al., Defendants.

First Department, March 23, 1954.

*Sibyl C. Welling* for appellant.

*Samuel Halpern* and *David S. Konheim* of counsel (*Konheim, Halpern & Wolf,* attorneys), for Glens Falls Indemnity Company, respondent.

*Leon J. Shapiro* of counsel (*L. J.* and *G. A. Shapiro,* attorneys), for Big-W Construction Corp., respondent.

CALLAHAN, J.   This appeal presents a question as to the right of a materialman to recover as a third-party beneficiary under a bond given in connection with a building contract.

Big-W Construction Corp. was the general contractor for the construction of a garden apartment in the Borough of Queens, City of New York. It hired Horowitz & Rubin, copartners (unserved defendants), as subcontractors to install the plumbing and heating system for a contract price of $390,000. One of the conditions of the subcontract was that Horowitz & Rubin furnish a 20% payment bond and a 20% performance bond.   Such bonds were given.   The defendant Glens Falls Indemnity Company was the surety, Horowitz & Rubin the principals, and Big-W the obligee on each bond.

Horowitz & Rubin did not complete the work under their subcontract. A dispute having arisen as to their performance, they filed a mechanics' lien for over $325,000. Materialmen have filed liens against this job and another in an amount exceeding $105,000.

Plaintiff, a materialman, thereupon commenced this action claiming that it delivered plumbing supplies valued at $17,077.36 to Horowitz & Rubin for installation in the project and claiming the right to recover a money judgment in that amount against the surety on the bond or, in the alternative, recovery in favor of the principal on the bond, the general contractor, for the use and benefit of plaintiff.

It was stipulated upon the trial that the plaintiff had received no inducements or representations from either the surety or the general contractor, which had led it to deliver the materials.

The payment bond in this action, after outlining the provisions of the plumbing subcontract, sets forth the condition of the bond as follows: '' if the Principal shall promptly make payment to all persons supplying labor and material in the prosecution of the work provided for in said contract, and any and all duly authorized modifications of said contract that may hereafter be made * * * then this obligation to be void, otherwise to remain in full force and virtue.''

The performance bond also recited the provisions of the subcontract and contained as its condition a provision that, '' if the Principal shall well and truly perform and fulfill all the undertakings, covenants, terms, conditions, and agreements of said contract '', with the addition of similar provisions as to any modifications of the contract.

Payment of all materialmen and laborers was among the covenants in the contract on the part of the subcontractor.

The trial court ruled that the plaintiff had no right to sue as third-party beneficiary under the payment bond for the reason that it was given for the sole benefit of the general contractor. We construe the bond differently.

Whether a materialman or laborer may sue upon a bond of the present nature is said to depend on whether it was the intent of the parties to the undertaking to benefit such third persons. That intent is ordinarily to be ascertained from the terms of the bond, plus the provisions of the building contract, considered in the light of the surrounding circumstances (*Fosmire* v. *National Sur. Co.*, 229 N. Y. 44). In the present case there appears to be no objective to be fulfilled by the payment bond

except to secure reimbursement of materialmen and laborers. The condition expressed is not that the general contractor will be indemnified against any loss by reason of nonpayment of materialmen or laborers, though, perhaps, we may assume that this was the object or motive for securing the undertaking.

A separate bond was provided for the protection of the general contractor from damage due to the failure of the subcontractor to complete the work. This, we think, distinguishes the case from those where a single bond has been given for performance or one for both performance and payment combined. In the latter cases protection to the obligee from damage by failure to perform may well be found to be the dominant purpose of the undertaking. The obligee might be deprived of such protection, if recourse is permitted to be had to the bond by way of suits by materialmen and laborers to secure payment of their claims (*Fosmire* v. *National Sur. Co., supra*). In the cited case, however, the bond was for performance as well as payment, and the Court of Appeals ruled that a third party might not sue because of danger of defeating the dominant purpose. However, it said (pp. 47–48): '' In so holding, we put our decision upon the single ground that the bond, read in its entirety, is inconsistent with an intention that the plaintiff and others in like position should have the right to sue upon it. If that intention is absent, the right to sue will be denied (*Simson v. Brown*, 68 N. Y. 355). A different question would be here if the bond had been conditioned for the payment of wages and nothing else ''.

We find no condition in the bond presently sued on except the payment of materialmen and laborers. We have no doubt that the bond was obtained by the general contractor primarily for its own protection, but we think that this supplies the motive in securing the undertaking rather than the intent as to who shall be benefited.

If there were no payment bond in existence and an unpaid materialman of a subcontractor placed a lien on the job, he would only be able to recover against the general contractor to the extent that the said contractor had moneys in his possession to which the subcontractor might have recourse. In the absence of such a fund any lien filed by any materialman or laborer would be ineffective as against the general contractor. The claimant would be relegated to an action against the subcontractor. It would seem, therefore, that the purpose of the payment bond between the subcontractor and the general con-

tractor would involve more than indemnifying the latter as to the risks of mechanics' liens and related litigation. It was designed to assure the general contractor that the materialmen and laborers would, in fact, be paid by the principal or the surety. Such payment would be in the direct interest of and enure to the benefit of the general contractor. The condition, therefore, would evidence an intent to benefit the third parties referred to. If this were not the purpose of the bond, then it would seem to be limited merely to securing the general contractor against any legal expenses, which it might incur in removing invalid liens.

It is reasonable to infer that the object of the payment bond was to secure some protection not afforded by the performance bond. Payment of materialmen and laborers was an expressed undertaking by the subcontractor in the contract, and its failure to perform in that respect would be covered by the performance bond insofar as indemnification of the general contractor is concerned.

It is also clear that under the performance bond materialmen or laborers would not have any right of action as third-party beneficiaries, because the dominant purpose of the performance bond is to insure a general contractor against losses from failure of the subcontractor to complete his obligations. Therefore, whatever recourse the materialmen had to the payment bond would in nowise interfere with or prejudice the rights of the general contractor to indemnification for nonperformance.

Defendants argue, in substance, that because the present bond covered only 20% of the contract price, and in view of the large amounts of the mechanics' liens, it might well be that the general contractor will need more protection than the $78,000 which is the penal sum of the bond, and, therefore, any payment to materialmen or laborers under the payment bond would deprive the principal of some of the protection for which it stipulated. It appears to us that this overlooks the fact that any payment to materialmen or laborers under the payment bond would relieve the general contractor *pro tanto* from the total risk which he might face due to nonpayment of the obligations of the subcontractor. The assertion of possible inadequacy amounts to no more than a claim that an insufficient bond may have been required. It would not disclose an intent that materialmen and laborers might not have the benefit of an undertaking that was given for payment of their claims.

We are determining solely the question of the right to bring the action, and not whether defendant may have any legal or equitable defense that might reduce plaintiff's damage. "The defendant will then be at liberty to show in reduction of the damages that other claimants, still unpaid, may share in the security. The aggregate liability to all must be within the limit of the penalty." (*Strong* v. *American Fence Constr. Co.*, 245 N. Y. 48, 54.)

In any event, the trial court in this action made no finding that defendants would be prejudiced by claims in excess of the penal sum of the bond, if this action was maintained. The complaint was dismissed solely on the ground that plaintiff had no right to sue.

In *McClare* v. *Massachusetts Bonding & Ins. Co.* (266 N. Y. 371) a suit by a third-party beneficiary was permitted under a surety bond in a case where a second bond had been given which would have furnished ample protection to the obligee. It is true that the *McClare* case may be distinguished in that the obligee was the State of New York, which had no financial interest of its own to protect. Nevertheless, we think that its holding indicates that the intent to benefit third parties may be established not only by the terms of the undertaking, but by the circumstance that another bond had been given, which reduced the risk of rendering nugatory the dominant purpose of the undertaking sued upon.

We have recently sustained an order denying a motion to dismiss a complaint in an action brought by a third-party beneficiary under a payment bond where a performance bond was also given (*McGrath* v. *American Sur. Co.*, 283 App. Div. 693). In that case, like the present, both bonds were given by subcontractors to the general contractor, but in the *McGrath* case they were for the full amount or 100% of the subcontract price. The difference involved in this respect relates only to the degree of the risk that the dominant purpose of the bond would be defeated.

We see no purpose in reviewing at length the many authorities in this and other States in which the present or a like question was involved. It is enough to say that the cases holding against the right of materialmen and laborers to sue are distinguishable in one way or another as to proof of intent to benefit third parties. This question of intent must depend upon the facts in each case.

The judgment appealed from should be modified so as (1) to reverse the dismissal of the complaint on the merits against defendants Glens Falls Indemnity Company and Big-W Construction Corp. and the granting of costs in favor of said defendants and direct as to said defendants a new trial with costs to abide the event; and (2) to affirm that part of the judgment directing that the action be severed as against defendants, Horowitz and Rubin, and as so modified the judgment should be affirmed.

BOTEIN, J. (dissenting). At the close of the entire case, the Trial Justice, sitting without a jury, dismissed the complaint and directed judgment for the defendants on the ground that the plaintiff had not established its right to recover on the payment bond in question. He held in effect that, in this State at least, when a materialman is not named in the bond nor expressly given the right to sue, he must show clearly that the parties entered into the undertaking with the intention of benefiting him (*Buffalo Cement Co.* v. *McNaughton,* 90 Hun 74, affd. on opinion below, 156 N. Y. 702; *Simson* v. *Brown,* 68 N. Y. 355; *Eastern Steel Co.* v. *Globe Ind. Co.,* 227 N. Y. 586; *Fosmire* v. *National Sur. Co.,* 229 N. Y. 44; *Von Clief & Sons* v. *City of New York,* 141 Misc. 216; *Graybar Elec. Co.* v. *Seaboard Sur. Co.,* 157 Misc. 275). Upon the record before us plaintiff, which relied largely on documents to spell out the requisite intent, failed to establish sufficient facts to sustain its burden. On the contrary, the wording of the bonds and the undisputed facts compel the explicit finding made by the trial court — that the bond in this case was executed only to indemnify the general contractor and not for the benefit of the plaintiff or others similarly circumstanced.

The majority opinion (p. 507) concedes that the bond in this case " was obtained by the general contractor primarily for its own protection " but characterizes this merely as a motive for securing the undertaking rather than as tending to establish an intent " as to who shall be benefited ". However, motive often illuminates intent, and I believe that in this case an intent to benefit itself must be spelled out of the general contractor's conceded desire to protect itself — and furthermore, an intent to protect itself against substantial damage. I cannot agree that the only objective to be fulfilled by the payment bond is to secure reimbursement of materialmen and laborers. While it is true that a materialman's lien against the general contractor for materials furnished a subcontractor is limited to the moneys

of the subcontractor in possession of the general contractor, no such restriction applies to the lien which the materialman may assert against the property itself (Lien Law, § 3). It is common practice for owners or principals to provide that they may withhold payments to the general contractors in such contingencies; and evidently one of the reasons the general contractor insisted upon the bonds was to guard against just such contingencies.

There are several factors distinguishing this case from *McGrath* v. *American Sur. Co.* (283 App. Div. 693) in which we affirmed an order denying a motion to dismiss a complaint in an action brought by a third party under a payment bond, where, as in this case, a performance bond was also furnished. In that case the general contractor agreed to construct a hospital for the Veterans Administration. Under its agreement and as required by the provisions of the Miller Act (U. S. Code, tit. 40, § 270a *et seq.*) the general contractor furnished a payment bond for the protection of all persons furnishing labor or materials in the prosecution of the work provided for in its contract. The Federal statute is read into the bond by operation of law (*Graybar Elec. Co.* v. *New Amsterdam Cas. Co.*, 292 N. Y. 246). Also, in *Fosmire* v. *National Sur. Co.* (*supra*), cited in the majority opinion, Judge CARDOZO said (p. 48): " A different question would be here if the bond had been conditioned for the payment of wages and nothing else. The interest of the state in the welfare of those who labor on its public works might then point to an intention to create a cause of action in their favor (*Matter of Int. Ry. Co.* v. *Rann*, 224 N. Y. 83; Williston on Contracts, secs. 372, 402. Cf. 28 U. S. Stat. 278; 33 id. 811; *Texas P. Cement Co.* v. *McCord*, 233 U. S. 157).'' Where the bond is furnished in connection with a governmental purpose the courts will more readily imply a direct intention to benefit a laborer or materialman (*McClare* v. *Massachusetts Bonding & Ins. Co.*, 266 N. Y. 371; *Johnson Service Co.* v. *Monin, Inc.*, 253 N. Y. 417; *Strong* v. *American Fence Constr. Co.*, 245 N. Y. 48). The plaintiff in this case, however, supplied materials in connection with a private job.

True, McGrath, as an employee of a subcontractor, sued on a payment bond furnished by his employer to the general contractor. The *McGrath* decision arose from a motion to dismiss the complaint as insufficient at law, and upon such a motion the pleadings are construed liberally. The allegations of the complaint and the copies of the bonds annexed thereto admitted

of the possibility upon trial of McGrath establishing that the subcontractor's bond was furnished in further fulfillment of the general contractor's basic obligation under the law to furnish a bond for the benefit of laborers and materialmen. The complaint and documents also held out the possibility that the plaintiff could establish the requisite clear intent under the law of this State. In the *McGrath* case the payment and performance bonds were each in the amount of 100% of the subcontractor's price, eliminating for all practical purposes any question of exhausting either bond. Furthermore, the defendant insurance company also wrote the Miller Act bonds, each in the amount of 100% of the price of the overall job. In the *McGrath* case the observation in the majority opinion herein (p. 506) that "there appears to be no objective to be fulfilled by the payment bond except to secure reimbursement of materialmen and laborers" becomes indeed appropriate. But the existence of a companion bond is a factor that I believe must be limited to whatever bearing it may have in ascertaining the intention of the parties to the bond in suit. Otherwise we will invite the ambiguous prospect of construing the provisions of identical undertakings differently, dependent on whether the obligees have entered into other separate and distinct undertakings.

In this case each bond was for 20% of the subcontractor's price — and the premiums were paid by the general contractor. I note this distinction only for its bearing on the intention of the general contractor in insisting upon the subcontractor furnishing the undertaking. The more likely inference to be drawn from this fractional undertaking is that the general contractor had no intention to benefit third-party materialmen. In demanding the bonds in this modest proportion of the entire contract price, the general contractor was probably taking a calculated risk as to what proportion of the material and labor obligations would not be met by the subcontractor; or cushioning it against the subcontractor failing to complete the final one fifth of the job.

Adequate affirmative proof was required of the plaintiff to the effect that the parties to the undertaking intended to benefit it. Far from meeting this standard, at the close of the entire case the inferences to be drawn from the evidence submitted tended to establish that the defendants had entered into this undertaking for the benefit of the general contractor. The Trial Judge properly directed judgment for defendants, and the judgment appealed from should be affirmed.

Dore, J. P., and Cohn, J., concur with Callahan, J.; Botein, J., dissents and votes to affirm in opinion.

Judgment modified in accordance with the opinion herein and, as so modified, affirmed. Settle order on notice. [See *post*, p. 943.]